## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**BRIAN J. MASON and BETHANY JO MASON**
On Behalf of Himself
and All Others Similarly Situated

                                            Hon.
                                            Mag.

        Plaintiff,                            Case No. 16-cv-

v.                                           **PROPOSED CLASS ACTION**

**STEVE SOWELL & ASSOCIATES, PLLC**
**and STEVE SOWELL individually and in his**
**official capacity as managing attorney**

        Defendant.

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, **BRIAN J. MASON and BETHANY JO MASON** (hereinafter referred to as "MASON" or "Plaintiff") by and through counsel, The Law Offices of Brian Parker, PC, and brings this action against the above listed Defendant, **STEVE SOWELL & ASSOCIATES, PLLC and STEVE SOWELL, individually and in his official capacity as managing attorney** ("Sowell" or "Defendant") on the grounds set forth herein:

## I.   PRELIMINARY STATEMENT OF THE WRONGFUL SCHEME AND PLAN OF DEFENDANT SOWELL

1.

Plaintiff brings this action for damages and injunctive relief based upon the Defendant's violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq* and The Regulation of Collection Practices Act (RCPA), codified at MCL 445.251 et seq. demanding a

trial by jury, brings this action for the illegal practices of the Defendants who, *inter alia*, used false, deceptive, misleading, unconscionable, and other illegal practices, in connection with their attempts to collect a debt from the Plaintiff and other Michigan Resident Condo Owners.

2.

Defendants are publicizing private, **Condo Lien debt** information as an announced debt collector beyond the requirements of the Michigan Condominium and Foreclosure Statute in violation of Federal regulations under the FDCPA. Every "Notice of Lien Foreclosure Sale" ("Foreclosure Notice" and "Lien Foreclosure Sale Notice") that Defendant Sowell sends out advertising a debt collector is pursuing a Michigan homeowner whose debt is in default and their home is for sale, ignores the homeowners' right to privacy and also the regulations and protections against harassment and abusive debt collection under the FDCPA. **<u>See Exhibit 1, 4 and 6 which is the Notice Sowell sends out to newspapers, the internet, Detroit Legal News and county buildings regarding the Plaintiff's defaulted debt and the Defendant's attempt to collect on the debt</u>**.

## <u>II. PARTIES</u>

3.

The Plaintiff is a natural person and consumer and resident of Holly, Oakland County, State of Michigan, and a "consumer" as defined by the FDCPA and RCPA.

4.

The Defendant Sowell is a debt collector organized as a Michigan Corporation in Mount Clemons, Macomb County, State of Michigan and is a debt collector of defaulted Condominium Association debt and liens and uses newspapers, internet, county buildings and mail to communicate the collection of consumer debts originally owed to others. Defendant is a collection agency under the FDCPA and RCPA.

5.

That Defendant Steve Sowell individually and as a manager is also located in Macomb county, State of Michigan and is responsible for the actions of Defendant Sowell as alleged in the below paragraphed allegations pursuant to the FDCPA, RCPA and *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

### III.    STATUES AND CASE LAW

**6**.

In *Glazer v. Chase Home Finance, LLC*, 704 F.3d 453, 464 (6th Cir. 2013), the Sixth Circuit made clear that all foreclosure action is considered debt collection under the FDCPA. The court stated that "if a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." Id. at 460. *Phillip Himmelein v Federal Home Loan Mortgage Corporation, Sowell Law P.C. FKA Sowell & Sowell, P.C. and Roger A. Smith*, File No. 1:15-cv-00813 (December 31, 2015).

7.

Neither *Himmelein* or *Glazer* in the Sixth Circuit creates a carve out or exception for the Notice of Mortgage Foreclosure Sale or Lien Foreclosure Sale Notice being anything but debt collection and part of the foreclosure process.

8.

In fact, on November 10, 2016, a Court in the Western District of Michigan denied a Defendant's Motion to dismiss in the same facts as here and found that "Defendant published the notice of sale for the very purpose of obtaining payment on the underlying debt through Michigan's foreclosure by advertisement statute, so it was a communication made in connection with the collection of a debt." **Please see Exhibit 2, Gray v Trott & Trott, PC, Case #16-cv-00237**.

**THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)**

9.

The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation.  Whether a debt collector's actions are false, deceptive, or misleading under § 1692(a)-g is based on whether the "least sophisticated consumer" would be misled by a defendant's actions. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006).). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir).

10.

"In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)." *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453. *See Goodrow v. Friedman & MacFadye*n, P.A., 788 F. Supp. 2d 464, 471 (E.D.Va. 2011) ("[A] debt collector must comply with the FDCPA while complying with a state foreclosure law."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998). "It is the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." *Romea* at 119.

11.

Under Michigan's Condominium Foreclosure Statute at MCL 559.208 mirroring MCL 600.3212 by reference in the Condominium Act, every notice of foreclosure by advertisement shall include all the following:

(3) A foreclosure proceeding may not be commenced without recordation and service of notice of lien in accordance with the following:

(a) Notice of lien shall set forth all of the following:

(i) The legal description of the condominium unit or condominium units to which the lien attaches.

(ii) The name of the co-owner of record.

(iii) The amounts due the association of co-owners at the date of the notice, exclusive of interest, costs, attorney fees, and future assessments.

(b) The notice of lien shall be in recordable form, executed by an authorized representative of the association of co-owners and may contain other information that the association of co-owners considers appropriate.

(c) The notice of lien shall be recorded in the office of register of deeds in the county in which the condominium project is located and shall be served upon the delinquent co-owner by first-class mail, postage prepaid, addressed to the last known address of the co-owner at least 10 days in advance of commencement of the foreclosure proceeding.

(a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.

(b) The date of the mortgage and the date the mortgage was recorded.

(c) The amount claimed to be due on the mortgage on the date of the notice.

(d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.

(e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

(f) A statement that if the property is sold at a foreclosure sale under this chapter, under section 3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

12.

The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq* was passed to

eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors

who refrain from using abusive debt collection practices are not competitively disadvantaged,

and to promote consistent State action to protect consumers against debt collection abuse. 15 U.S.C. § 1692.

13.

The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Sixth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd." *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008).

14.

The FDCPA applies to lawyers like Steve Sowell and Steve Sowell & Associates, PLLC regularly engaged in consumer debt-collection litigation. *Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir. 1999); *See also Kistner*, 518 F.3d 433 (the law firm's owner may also be individually liable).

15.

In *Heintz v. Jenkins,* the Supreme Court refused to defer to the FTC commentaries. *Heintz* addressed the FTC's purported exclusion from FDCPA coverage of attorneys engaged in "legal activities" as opposed to those engaged in "debt collection activities." Rejecting this exclusion, the Supreme Court noted that the commentaries themselves state that they are "not binding on the Commission or the public." *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995).

16.

Under the FDCPA, a "consumer" is any natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. §1692a (3). Plaintiff is a consumer.

17.

Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a (5). The condo lien debt here is a "debt" under the FDCPA.

18.

Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a (6). The Sowell Defendants are both debt collectors under the law and by its own admission in its Foreclosure Notice of Mortgagee Sale.

19.

Under 15 U.S.C. § 1692a (2), the term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium. Defendant Sowell and Sowell & Associates are communication the Plaintiffs' debt information to the general public through the Notices at **Exhibit 1, 4 and 6**. **Please see Exhibit 2, Gray v Trott & Trott, PC, Case #16-cv-00237**. See *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453. *Phillip Himmelein v Federal Home Loan Mortgage Corporation, Sowell Law P.C. FKA Sowell & Sowell, P.C. and Roger A. Smith*, File No. 1:15-cv-00813 (December 31, 2015).

20.

The Defendants are debt collectors of defaulted condo liens engaged in the business of collecting of consumer debts originally owed to others. See *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453.

21.

Among the *per se* violations prohibited by the FDCPA is 15 U.S.C. § 1692c(b):

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, *a debt collector may not communicate, in connection with the collection of any debt, with a person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector*.

22.

The FDCPA states at 15 U.S.C. § 1692d that:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(**4**) The advertisement for sale of any debt to coerce payment of the debt.

23.

It is a violation of 15 U.S.C. § 1692d (4) for a debt collectors like the Sowell Defendants to advertise the sale of any debt to coerce payment of the debt. In violation of the FDCPA and as a debt collector, Sowell is communicating to the world and the State of Michigan, the private names and defaulted, debt information in every Notice of Foreclosure Sale it publicizes in the Notice information not required by the Michigan Condominium or Mortgage Foreclosure Statute.

24.

By its express terms, § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse *any person* in connection with the collection of a debt." (Emphasis added). We have interpreted this to mean that "any person who has been harmed by a proscribed debt collection practice under § **1692d** ... [may] sue for damages under § 1692k(a)(2)(A)." *Montgomery v. Huntington Bank*, 346 F.3d 693,

697 (Court of Appeals, 6th Cir. 2003).

25.

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)), rev'd on other grounds sub nom. *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016).

26.

When there is a conflict in the protections offered to a consumer in a Michigan Statute and the Federal Statute, the FDCPA states that the debt collector must follow the Federal Statute when it offers greater protections than the conflicting State Statute:

**§ 816.  Relation to State laws [15 USC 1692n]**
This title does not annul, alter, or affect, or exempt any person subject to the provisions of this title from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this title, and then only to the extent of the inconsistency. For purposes of this section, ***a State law is not inconsistent with this title if the protection such law affords any consumer is greater than the protection provided by this title.***

27.

Article VI of the Constitution of the United States provides:

This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding. U.S. Const. art. VI, cl. 2.

28.

Under 15 U.S.C.§ 1692n, the FDCPA does not preempt state laws unless and only to the extent "those laws are inconsistent with any provisions of this subchapter." Importantly, a state law is not "inconsistent" with the FDCPA "if the protection such law affords any consumer is greater than the protection provided by this subchapter." Accordingly, only state laws which make it impossible to comply with both state and federal law (*Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)), such as where state law requires conduct prohibited by federal law, are preempted.

29.

Where there is "conflict preemption," which is "where state law `stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" embodied by the federal law, *(Gade v. National Solid Wastes,* 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)), `[t]he purpose of Congress is the ultimate touchstone.'" *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

30.

The FDCPA preempts state law only when those laws are "inconsistent with any provisions of this subchapter." "A State law is not inconsistent with [the FDCPA] if the protection such law affords any consumer is greater than the protection provided by this subchapter." See *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987).

## REGULATION OF MICHIGAN COLLECTION PRACTICES ACT (RCPA)

31.

The Michigan Consumer Protection Act (RCPA), MCL 445.251 et seq. is an act to regulate the collection practices of certain persons; to provide for the powers and duties of certain state agencies; and to provide penalties and civil fines.

32.

"Claim" or "debt" means an obligation or alleged obligation for the payment of money or thing of value arising out of an expressed or implied agreement or contract for a purchase made primarily for personal, family, or household purposes. Defendants are third party debt collectors/agencies and attorneys seeking the payment of money for a creditor client based on original obligations between Plaintiff class members and the original obligors in the County of Kalamazoo and the State of Michigan.

33.

"Collection agency" means a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another, or repossessing or attempting to repossess a thing of value owed or due or asserted to be owed or due another person, arising out of an expressed or implied agreement. Collection agency includes a person representing himself or herself as a collection or repossession agency or a person performing the activities of a collection agency, on behalf of another, which activities are regulated by Act No. 299 of the Public Acts of 1980, as amended, being sections 339.101 to 339.2601 of the Michigan Compiled Laws. Collection agency includes a person who furnishes or attempts to furnish a form or a written demand service represented to be a collection or repossession technique, device, or system to be used to collect or repossess claims, if the form contains the name of a person other than the creditor in a manner indicating that a request or demand for payment is being made by a person other than the creditor even though the form directs the debtor to make payment directly to the creditor rather than to the other person whose name appears on the form. Collection agency includes a person who uses a fictitious name or the name of another in the collection or repossession of claims to convey to the debtor that a third person is collecting or repossessing or has been employed to collect or repossess the claim. Defendant Sowell and Sowell & Associates, PLLC

are operating in Oakland County and throughout the State of Michigan as "collection agencies" under the RCPA.

34.

"Communicate" means the conveying of information regarding a debt directly or indirectly to a person through any medium. Defendants are communicating with Michigan consumers through letters and Public Mortgage Foreclosure Sale Notices.

35.

"Consumer" or "debtor" means a natural person obligated or allegedly obligated to pay a debt. Plaintiff is a consumer under the RCPA.

36.

"Creditor" or "principal" means a person who offers or extends credit creating a debt or a person to whom a debt is owed or due or asserted to be owed or due. Creditor or principal does not include a person who receives an assignment or transfer or a debt solely for the purpose of facilitating collection of the debt for the assignor or transferor. In those instances, the assignor or transferor of the debt shall continue to be considered the creditor or the principal for purposes of this act.

37.

"Person" means an individual, sole proprietorship, partnership, association, or corporation. Defendant Sowell is a regulated person under § 445.251(g)(xi),

38.

The MCPA's reference to "[a]n attorney handling claims and collections on behalf of a client and in the attorney's own name," Mich. Comp. Laws § 445.251(g)(xi), is better understood as encompassing *both* attorneys who handle claims and collections on behalf of a client *and* attorneys who seek to collect a debt owed to themselves or their firms. *Misleh v.*

*Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 - Dist. Court, ED Michigan 2011.

39.

The RCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for collecting a consumer debt. *McKeown v. Mary Jane M. Elliott P.C., No. 07-12016-BC, 2007 WL 4326825, at \*5 (E.D. Mich. Dec. 10, 2007* (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)) held that "§ 445.252(e) applies to Defendant, its analysis is similar to that under § 1692 of the FDCPA, both of which bar misleading and deceptive communications… In light of the similarity between 15 U.S.C. § 1692e and these causes of action, it appears appropriate to view Plaintiff's claims under the same "least sophisticated consumer" standard.

40.

The Plaintiff, on behalf of himself and all others similarly situated, seeks ACTUAL DAMAGES, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court in a Class Action context, pursuant to the FDCPA and the RCPA and all other common law or statutory regimes. The Plaintiff, on behalf of himself and all others similarly situated requests that he and the class members be awarded:

a. Their Actual Damages suffered by the wrongful foreclosure notices and breach of privacy collecting and publicizing his lien foreclosure debt using **Exhibit 1**,

b. Injunctive Relief stopping Defendants from continuing their plan and scheme through Notices such as **Exhibit 1**,

c. Attorney fees and costs under the FDCPA and RCPA.

**IV. JURISDICTION AND VENUE**

41.

This court has jurisdiction over this Complaint pursuant to the FDCPA, 15 U.S.C. §

1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015).

42.

The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.   28 U.S.C. § 1367(a).

43.

Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202. Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced. There is nothing unique or novel about Plaintiff's state claims.

**V. FACTUAL ALLEGATIONS**

44.

# Steve Sowell & Associates PLLC

2 Crocker Blvd. Suite 301 • Mount Clemens, MI  48043 • (586) 465-9529 • steve@sowell-law.com

Steve Sowell has been practicing real estate and creditors' rights law since 1985.  After working for other law firms for 12 years, he hung out his own shingle in 1997, and formed Steve Sowell & Associates PLLC in 2007.

Steve's areas of practice include:

- Community association (condominium and homeowner association) law,
- Land Contract formation, forfeiture, and foreclosure,
- Residential and commercial leasing and eviction,
- Residential and commercial closings (including the purchase and sale of a business),

- Other miscellaneous real estate related matters, including:
  - formation of owner entities (corporations, limited liability companies),
  - quieting title,
  - boundary disputes and adverse possession.

**Please see Exhibit 3, Defendants web site**.


45.

At the ***pre-publication stage***, Steve Sowell sends signs and sends out to Michigan homeowners an initial communication letter outlining their intent to collect upon the debt while also providing a Notice of Foreclosure Sale of the Plaintiff class's home showing the date of foreclosure. **Please see Exhibit 1 as an example of the letter sent and foreclosure notice to the homeowners generally and Plaintiffs specifically that was sent for viewing by the public at the Oakland County Clerk and Register of Deeds office and public website**.

46.

Plaintiff was only one month late on his association assessment payments for a total amount of $225. Defendant Sowell's initial communication letter of November 2, 2016 at **Exhibit 1** to Plaintiff asks for $50.00 in late fees and $336.00 in costs and attorney fees. The letter was accompanied by a Condominium Lien Pursuant to MCLA 559.208 that stated:

CONDOMINIUM LIEN PURSUANT TO MCLA §559.208

1.  Name of Association (Project):  Orchard Valley Village Association, 5454 Gateway Center, Suite B , Flint, MI
2.  Name of Co-owner(s):  Brian J. Mason and Bethany Jo Mason, 3378 Hilltop Drive, Holly, MI 48442
3.  The property which is the subject of this lien is located in the Village of Holly, Oakland County, Michig
described as Unit(s) 22, Orchard Valley Village Condominium, according to the Master Deed thereof recorde
17012, Page 212, Oakland County Records, designated as Oakland County Condominium Subdivision Plan No.
3378 Hilltop Drive
4.  Orchard Valley Village Association claims a lien pursuant to MCLA §559.208 for non-payment of con
assessments against the Unit described in Paragraph 3 above.  According to the records of the Association, t
owned by the person(s) identified in Paragraph 2 above.
5.   The Association may foreclose this lien by judicial action or by advertisement, or it may commence an
recover a money judgment without waiving or foreclosing this lien.  In any proceeding arising out of a defa
owner, including a default in payment of assessments, the association of co-owners, if successful, may recover th
the proceeding, other charges, and such reasonable attorney fees as may be determined by the court to t
authorized by the terms and provisions of the Condominium Documents.  In the event that the associatio
foreclose the lien by advertisement, the Co-owner is notified that he may request a judicial hearing by bri
against the Association.  Pursuant to MCLA §559.208(2), the Association is entitled to attorney fees for forec
advertisement or by judicial action.
6.   A copy of this lien was served on the co-owner(s) stated in  Paragraph 2 above on November 2, 2016, by
mail, postage prepaid, and addressed to the last known address of the co-owner appearing in the Association's
7.  There is now due and owing, over and above all legal setoffs, the sum of $225 in assessments as of Novem
exclusive of late charges, interest, costs, attorney fees, future assessments, or any other charges which may be
the association.  This lien secures all charges levied by the Association as allowed by the Michigan Condomi
and/or Michigan Law.

November 2, 2016

_____

Steve Sowell, Attorney and
agent for Orchard Valley Village Association

State of Michigan
County of Macomb

This Condominium Lien was acknowledged before by
Steve Sowell, attorney and agent for
Orchard Valley Village Association on November 2, 2016.

_____
Notary Public

Eugene L. Casazza, Notary Public
Wayne County, Michigan
My Commission Expires 5/15/2020
Acting in Macomb County

Drafted by and when recorded
Steve
Steve Sowell & Associates
2 Croc
Mt. Clemens,

**Please see Exhibit 3**.

47.

Defendant Mr. Sowell sent dunning letters at **Exhibit 1** as a debt collector as defined by

15 U.S.C. § 1692a (6). The Letter at **Exhibit 1** was sent to Plaintiff in connection with the

collection of a "debt" as defined by 15 U.S.C. § 1692a (5).

48.

The Condominium Lien attached to the letter at **Exhibit 1** stated that, "In any proceeding

arising out of a default by a co-owner, including a default in payment of assessments, the

association of co-owners, *if successful*, may recover the costs of the proceeding, other charges, and

such reasonable attorney fees as maybe determined by the court to the extent authorized by the

terms and provisions of the Condominium Documents."

49.

The Website of Defendant confirms that the Condo Association is entitled to recover its

costs and attorney fees from a defaulting co-owner. "However, this provision of the act applies only to defaults by co-owners, and then only if the association is *successful*."

**We can collect attorney fees from defaulting co-owners, so why can't we collect attorney fees when we have to sue our [roofer, snow plow service, painters, etc.]**

Michigan follows the "American Rule" regarding recovery of attorney fees, which means that each party pays their own attorney fees and costs unless a statute, court rule, or contractual provision requires the losing party to pay the prevailing party's attorney fees.  The Michigan Condominium Act contains one of these exceptions:  MCLA §559.206(b) provides that "In a proceeding arising because of an alleged default by a co-owner, the association of co-owners or the co-owner, if successful, shall recover the costs of the proceeding and reasonable attorney fees, as determined by the court, to the extent the condominium documents expressly so provide."  Most condominium documents allow the association to recover its costs and attorney fees from a defaulting co-owner.  However, this provision of the act applies only to defaults by co-owners, and then only if the association is successful.  It does not apply to disputes with other persons, such as roofers, landscapers, etc.

It is possible to negotiate a provision in your contract with your contractor for the loser to pay the winner's attorney fees, but bear in mind that there has to be ameeting of the minds to form a contract.  Your contractor may not agree to such a provision.

**Sowell website at Exhibit 3 in a Q&A**.

50.

The next part of the foreclosure process after Sowell sends out the initial dunning letters is the ***publication*** stage where Sowell advertises the Notice of Lien Foreclosure Sale at **Exhibit 1, 4 and 6**. This communication and Notice is placed in local newspapers, the internet, county buildings and the Detroit Legal News and made after the initial communication at **Exhibit 1** under Section 1692e (11) of the 'FDCPA.

51.

Defendant Sowell then sent Mr. Mason a letter on December 27, 2016 advising him that the condo association would be publicizing an attached foreclosure notice at **Exhibit 4**. The Notice was placed in local newspapers, county buildings and the Detroit Legal News starting on December 29, 2016. **See Notices at Exhibit 1, 4 and 6 that a Sheriff Sale of the Condo was to occur on January 31, 2017**.

52.

The Masons inquired as to how much they owed to stop the Sheriff Sale advertised for January 31, 2017.  Defendant Sowell notified Mr. Mason that he owed the amount of $1,686.50. Mr. Mason asked for a breakdown of what he owed to Defendant Sowell and was told he would receive a detailed accounting upon paying the $1,686.50. Mr. Mason was advised by Defendant that if he did not pay the $1,686.50 by January 9, 2017, the amount would increase by at least $400.

53.

After Ms. Mason paid the $1,686.50 at Defendant's Office, the Defendant provided a letter to Plaintiff outlining all of the costs owed by Plaintiff to Defendant Sowell. **Please see Exhibit 5**. The breakdown of attorney fees owed totaled $875.00 with no explanation. The letter from Sowell at **Exhibit 5** states the following amounts were owed after the $225 monthly payment:

## REINSTATEMENT

Printed on 1/9/2017

Payment must be by cashier's check, certified check, or money order(s) **made payable to** "Orchard Valley Village Association" but received at the address below by the date below. No cash or personal checks will be accepted.  Partial payments cannot be accepted.  Costs and attorney fees are subject to change after the date provided below.  Please contact this office to verify the amount due before sending in funds.

**This office is attempting to collect a debt; any information obtained will be used for that purpose**

| File Name | | | | Client No. | File No. |
|---|---|---|---|---|---|
| Brian J. Mason and Bethany Jo Mason | | | | 3378-22 | 20160229 |
| 3378 Hilltop Drive   Holly   MI | | | | | |

| Due For Date 6/1/2016 | | | Payments accrue  annually | | No. of pymts due | 1 |
|---|---|---|---|---|---|---|

| | | | | | Costs: | |
|---|---|---|---|---|---|---|
| Partial Balance: | | | $0.00 | | | |
| Payments: | Months: | | | Title Fee | | $250.00 |
| $225.00 | x | 1 | = | $225.00 | Filing Fee | |
| $0.00 | x | | = | $0.00 | Service Fee | $35.00 |
| $0.00 | x | | = | $0.00 | Motion Fee | $0.00 |
| $0.00 | x | | = | $0.00 | Judgment Fee | |
| | | Subtotal | 225.00 | Deposition Fee | | |
| Late Charges: | Months: | | | Publication Fee | | $130.50 |
| $10.00 | x | 7 | = | $70.00 | Posting Fee | $40.00 |
| | x | | = | | Sheriff's Fee | $0.00 |
| | x | | = | | Recording Fee | $61.00 |
| | x | | = | | Revenue Stamps | $0.00 |
| | **Total Late Charges** | | 70.00 | Sale Fee | | $0.00 |
| Advances: | | | | N/A | | $0.00 |
| Inspections: | | | | **Total Costs** | | **$516.50** |
| N/A | | | $0.00 | | | |
| N/A | | | $0.00 | | | |
| Total Costs: | | | $516.50 | | | |
| Attorney Fees | | | $875.00 | | | |
| **Total:** | | | **$1,686.50** | | | |

This amount is good only until:      January 9, 2017

Reinstatement quote provided by:
**Steve Sowell & Associates, PLLC**
2 Crocker Blvd., Suite 301
Mt. Clemens, MI  48043

586-465-9529
steve@sowell-law.com

54.

Homeowners like the Masons and class members are being overcharged by Defendant Sowell with the threat that they will lose their home if they don't pay these extra fees and costs. Defendant Sowell and Sowell & Associates keep a commission or percentage of these costs while a collector for the condo associations it represents in violation of the FDCPA and RCPA.

55.

The Defendant is charging homeowners attorney fees and costs even though Defendants aren't *successful* in court in obtaining a judgement or an award "as maybe determined by the court to the extent authorized by the terms and provisions of the Condominium Documents.at court."

56.

Further and in violation of Plaintiff and the Class Members right to privacy and rights under the FDCPA and RCPA, the Notice of Mortgage Foreclosure Sale and Plaintiffs' private debt information was placed in newspapers across the county of Oakland, in the Detroit Legal News, the internet and county buildings starting December 29, 2016 through January 26, 2017. **Please see Exhibit 6**.

57.

In the Lien Foreclosure Notice publicized in the press, county buildings and the Detroit Legal News, the Defendants publicize that, "This office is a debt collector. Any information obtained will be used to collect a debt." Please see **Exhibit 1, 4 and 6**.

58.

There is no requirement under Michigan's Foreclosure Statute at MCLA 600.3212 or MCL 559.208 that the Foreclosure Notice must contain information that the debt is being collected by a debt collector or that any information obtained will be used for debt collection.

59.

Further, the Notices at **<u>Exhibit 1, 4 and 6</u>** state, "If you are in active military service, please contact the undersigned."

60.

There is no requirement under Michigan's Foreclosure Statute at MCLA 600.3212 or MCL 559.208 that the notice must contain information or about calling the collection attorney if "you are in the active military."

61.

In breach of the Mason's privacy specifically and the class members right to privacy in general, the Notice at **<u>Exhibit 1, 4 and 6</u>** provides information to the anyone reading it that Plaintiffs or any other class member is in Default of their Condo Association financial responsibilities and in default.

62.

There is no requirement under Michigan's Foreclosure Statute at MCLA 600.3212 or MCL 559.208 that the notice must contain information about the homeowner or debtor being in default on their obligations.

63.

Contrary to the strict prohibitions of the FDCPA at 15 U.S.C. § 1692d, the Foreclosure Notice at **<u>Exhibit 1, 4 and 6</u>** provides information to the public such as notice regarding military contact, mini Miranda notice, attorney collection notices and notice of default of debt that are not required by Michigan Statute.

64.

Contrary to the strict prohibitions of the FDCPA at 15 U.S.C. § 1692e (6) and 15 USC 1692(a), the Foreclosure Notice at **<u>Exhibit 1, 4 and 6</u>** breaches the Michigan homeowners' right to privacy and provides private defaulted debt information to the public in violation of 15 U.S.C.

§ 1692c(b), that Plaintiff is being pursued by a debt collector and that she is in default on a debt even though that is not required to be stated by Michigan Statute.

65.

There is no compelling or legal reason or Michigan Statue justification that requires the Sowell defendants to publicize that the Mason family is in default on a condo debt and that they are being pursued by an Attorney debt collector collecting upon a debt in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692c(b).

66.

Further, the private information that Sowell is placing in public view is false, misleading and deceptive in that Sowell is falsely representing that it is only providing the debt information to conform with the Michigan Foreclosure or Condominium Statute.

67.

Further, in the Q&A section of Defendant Sowell's website, Defendant details that publicizing this private debt information is a violation of Michigan law:

**My country club posts the names of members who are behind on their dues on the [bulletin board, web site, etc.] and it seems to get results. Can we do the same?**

No.   The Michigan Regulation of Collection Practices Act (MRCPA) specifically prohibits:

(l) Publishing, causing to be published, or threatening to publish lists of debtors, except for credit reporting purposes, when in response to a specific inquiry from a prospective credit grantor about a debtor, and

(m) Using a shame card, shame automobile, or otherwise bring to public notice that the consumer is a debtor, except with respect to a legal proceeding which is instituted.

The MRCPA applies both to the association itself and to any "debt collectors" as defined by the Act, which includes the association's management company and its attorneys.

**<u>Please see Exhibit 3</u>**.

68.

As the Michigan Foreclosure Statute under MCLA 600.3212 or MCL 559.208 directly

conflicts with the regulations of federal law, it is preempted by the protections codified under the FDCPA.

69.

Selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt is considered debt collection under *Glazer v. Chase Home Finance LLC*, 704 F.3d 45. "It is the provisions of the FDCPA that by and of themselves determine what debt collection activities are improper under federal law." *Romea* at 119.

70.

Defendant Sowell is forcing condo homeowners to pay unjustified attorney fees and costs without a Court ruling with the threat of a Sheriff sale if they unexplained amounts are not paid.

71.

Defendant Sowell knows it is collecting on a debt in **Exhibit 1**. Under 15 U.S.C. §§ 1692e (11), The mini Miranda is only required to be placed on "*subsequent communications that the communication is from a debt collector.*" Sowell was aware that the publicizing of the Foreclosure Notice at **Exhibit 1, 4 and 6** was debt collection as it followed 15 U.S.C. §§ 1692e (11) by placing the mini Miranda on the Foreclosure Notice: This office is a debt collector. Any information obtained will be used to collect a debt.

72.

Plaintiffs are informed and believe, and on that basis allege that the Defendants have a policy and practice of publicizing to the world and the public in the State of Michigan, private debt collection information of homeowners in default of their condo lien debts without any regard to Applicable Federal law and the homeowner's right not to have their debts published to third parties in violation of 15 U.S.C. §§ 1692e, 15 U.S.C. §§ 1692c(b), 15 U.S.C. §§ 1692d (4), and 15 U.S.C.

§§ 1692e (6).

73.

Plaintiff is informed and believes based upon the information from **Exhibit 1, 4 and 6** that Defendants operate a collection agency and a law firm collecting Condo Lien Debt under the FDCPA and RCPA.

74.

In pursuing Condo Lien debts through the newspapers, Detroit legal news and posting in public places, Defendants are advertising for sale the claims and homes of homeowners in Michigan to force payment on the underlying claim in violation of the RCPA and FDCPA.

## VI. CLASS ACTION ALLEGATIONS

75.

Plaintiff realleges the above pleadings.

76.

The FDCPA Class consists of all persons with a Michigan address that have had their name and address, Condo debt and the amount of the Condo debt in default and owed published inside a Foreclosure Notice of Sale (**Examples being Exhibit 1, 4 and 6**) and published in newspapers, county buildings and the internet in violation of 15 U.S.C. §§ 1692e, 15 U.S.C. §§ 1692c(b), 15 USC 1692e (6), 15 U.S.C. §§ 1692e(2)(A), (B) and 15 U.S.C. §§ 1692d (4) within a one year period prior to the filing of this lawsuit.

77.

With the FDCPA Class, there are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendant's conduct in connection with the Publicizing that a homeowner owes a Condo, the amount, their address and that a debt collector is involved in

a Lien Foreclosure Sale violates the FDCPA.

78.

A FDCPA *sub class* would be all homeowners with a Michigan address that have paid a condo lien debt to Defendant Sowell for excessive and increased collection attorney fees and costs BEFORE a Court has determined that "the association of co-owners, *if successful*, may recover the costs of the proceeding, other charges, and such reasonable attorney fees as maybe determined by the court to the extent authorized by the terms and provisions of the Condominium Documents."

79.

There are no individual questions here. All Michigan homeowners with defaulted debt are having their Condo Lien default placed out in the open for the world to see in violation of the FDCPA.

80.

Plaintiff will fairly and adequately protect the interests of the class. Plaintiff is committed to vigorously litigating this matter. He is greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, she has retained counsel experienced in litigating the FDCPA, consumer advocacy and class claims. Neither Plaintiff nor their counsel has any interests which might cause them to not vigorously pursue this claim.

81.

The RCPA Class consists of all persons with a Michigan address that were pursued for a Condo Lien debt by a collection agency and attorneys who publicize the Michigan class homeowners defaulted condo debt in newspapers, in county buildings, the internet and in the Detroit Legal News ( **Exhibit 1, 4 and 6**) to sell the underlying debt in violation of MCLA 445.252(a), MCLA 445.252(e), MCLA 445.252(f), MCLA 445.252(d), MCLA 445.252(n), MCLA 445.252(m) and MCLA 445.252(q) during the six year period immediately preceding the

filing of this complaint and the date of class certification.

82.

The RCPA *sub class* would be all homeowners with a Michigan address that have paid a condo lien debt to Defendant Sowell for excessive and increased collection costs BEFORE the Court has determined that "the association of co-owners, *if successful*, may recover the costs of the proceeding, other charges, and such reasonable attorney fees as maybe determined by the court to the extent authorized by the terms and provisions of the Condominium Documents."

83.

There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal and common issue is whether Defendants' conduct in collection attempts publicize the mortgage debt default of Michigan homeowners in violation of the RCPA

84.

There are no individual questions, other than whether the RCPA class members received one of the offending letters Public Lien Foreclosure Sale Notices (**Exhibit 1, 4 and 6**), which can be determined by a ministerial inspection of the records and collection notes of Defendants.

85.

Plaintiff will fairly and adequately protect the interests of the RCPA class. Plaintiff is committed to vigorously litigating this matter. She is greatly annoyed at being the victim of Defendants' illegal practices and wishes to see that the wrong is remedied. To that end, she has retained counsel experienced in litigating the RCPA, consumer advocacy and class claims. Neither Plaintiff nor their counsel has any interests, which might cause them to not vigorously pursue this claim.

86.

Plaintiff claims are typical of the claims of the classes, which all arise from the same operative facts and are based on the same legal theories.

87.

A class action is a superior method for the fair and efficient adjudication of this controversy. Most of the consumers who sued by Defendants undoubtedly have no knowledge that their rights are being violated by illegal collection practices. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum damages in an individual action are small but illegal percentages of fees and costs. Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, e.g, for securities fraud.

88.

Certification of each class is appropriate because:

(a)the class is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (d) the representative parties will fairly and adequately assert and protect the interests of the class; and (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

89.

There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members.   The predominant questions are:

a. Whether Defendants had a practice of publicizing the

homeowner's private debt information while notifying the world the homeowners are in default and pursued by debt collectors.

b. Whether Defendants overcharged homeowners with excessive payoff, collection and administrative costs.

c. Whether Defendants publicized the private debt information of Michigan class members in newspapers, county buildings and the internet.

d. Whether doing the above violated the FDCPA and RCPA.

90.

Certification of each class also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class.

91.

Certification of each class under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure is appropriate because:

(a) The questions of law and fact common to the members of each class predominate over any questions affecting an individual member: and

(b) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

92.

Certification of each class under Rule 23(b)(2) of the Federal Rules of Civil Procedure also is appropriate because Defendants have acted on grounds generally applicable to each class, thereby making declaratory and injunctive relief appropriate with respect to each class as a whole.

93.

Plaintiffs request certification of a hybrid class action, combining the elements of FRCP 23(b)(3) for monetary damages and FRCP 23(b)(2) for equitable relief.

94.

Plaintiffs seek specific Actual and Statutory damages each member suffered and Declaratory and Injunctive Relief from the Court Ordering that this practice of Defendant be stopped and that the collection practice of Defendants be Regulated to prevent Michigan residents being subject to illegal debt collection practices of Defendant Sowell.

**VII. CLAIMS FOR RELIEF**

**RCPA CLASS ALLEGATIONS FOR ACTUAL DAMAGES AND INJUNCTIVE RELIEF**

95.

Defendants have violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.    Defendants violated MCLA 445.252(a) by communicating with Plaintiff and class members in a deceptive manner using the stationery of an attorney to charge and receive excessive collection costs and expenses from Plaintiff and class members with (*Exhibit 5*) as mentioned above; and

b.    Defendants violated MCLA 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt, using (*Exhibit 1, 4 and 6*) as mentioned above; and

c.    Defendants violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt or concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt at ((*Exhibit 1, 3, and 6*); and

d.      Defendant has violated MCLA 445.252(f) Misrepresenting in a communication with a debtor 1 or more of the following:

(i)     The legal status of a legal action being taken or threatened.

(ii)    The legal rights of the creditor or debtor; and

e.      Defendants violated MCLA 445.252(d) by using forms that may otherwise induce the belief that they have judicial or official sanction is involved such as (*Exhibit 1, 4 and 6*) *1)*;.and

f.      Defendant violated MCLA 445.252(a) by communicating with a debtor in a misleading and deceptive manner with forms such as (*Exhibit 1, 4 and 6)*; and

g.      Defendants violated MCLA 445.252(m) by bringing the private debt information of Michigan Residents into the public view through newspapers, county building and internet publication with *Exhibit 1, 4 and 6*; and

h.      Defendants violated MCLA 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee with forms and practices involving (*Exhibit 1, 4 and 6*).

    **Wherefore**, Plaintiff seeks judgment and INJUNCTIVE RELIEF against Defendants for:

a.      Actual damages based on the illegal interests and costs Defendants charged of each Plaintiff, pursuant to M.C.L. 445.257 ((1). Triple Actual damages if the Court finds Defendants' scheme and plan alleged above as willful non-compliance. M.C.L. 445.257(2); and

b.      Equitable, declaratory and injunctive relief pursuant to M.C.L. 445.257(1) to stop the plan and scheme of defendants as alleged above using (*Exhibit 1, 4 and 6*); and

c.      Reasonable attorney's fees and court cost pursuant to M.C.L.445.257(2) with judicial sanction and Injunctive Relief.

## FDCPA RECOVERY CLAIMS FOR RELIEF

96.

Defendants violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.   Defendants violated 15 U.S.C. 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a Condo Lien debt using the communications at (*Exhibit 1, 4 and 6)* above; and

b.   Defendants collected on the debt and violated 15 U.S.C. 1692d with conduct described above that harasses and abuses a homeowner in connection with collecting the Condo Lien debt through (*Exhibit 1, 4 and 6*) in publicizing private debt information overcharging the homeowner with a threat of foreclosure; and

c.   The Defendants communicated to third parties and the world in publishing foreclosure sale notices with the Condo Lien debt amount, the homeowner's name and address and that she is in default through (*Exhibit 1, 4 and 6*) in violation of 15 U.S.C. §1692c(b); and

d.   Defendants violated 15 USC 1692e (6) with the false representation or implication that the Notice of Foreclosure Sale in (*Exhibit 1, 4 and 6*) allows the debt collector to violate the FDCPA; and

e.   Defendants violated 15 U.S.C. 1692d (4) by publishing that the sale of the Condo Lien debt to the world and the State of Michigan using (*Exhibit 1, 4 and 6)* as mentioned above to secure payment of the excessive attorney fees and costs amount charged by Defendant Sowell in **Exhibit 5**.

f.   Defendants violated 15 U.S.C. 1692e(2)(A) and (B) with the false amounts charged of Michigan Homeowners and Ms. Malley though use of publishing that the sale of the Condo Lien debt to the world and the State of Michigan using **Exhibit 1** as mentioned above to secure payment of the amount charged by Defendant Sowell in **Exhibit 5**.

g.   Defendants violated 15 U.S.C. 1692e (10) as mentioned above and by publishing that the

sale of the mortgage debt to the world and the State of Michigan using (*Exhibit 1, 4 and 6*) as mentioned above to secure payment of the amount charged by Defendant Sowell in **Exhibit 5**.

**Wherefore**, Plaintiff seeks judgment against Defendant for:

a.    Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B);

b.    Statutory damages for the members of the FDCPA Class, *pro rata,* in the amount of the lesser of $500,000.00 or one percent centum of the net worth of Defendants pursuant to 15 U.S.C. 1692k(a)(2)(B);

c.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and;

d.    Such further relief as the court deems just and proper.

## VIII. JURY TRIAL DEMAND

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

January 17, 2017                    s/Brian P. Parker
                                   BRIAN P. PARKER (P48617)
                                   Attorney for Plaintiff and Plaintiff Class Members